IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| GEOFFREY GRAHAM, | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-35 |
| v. | |
| TOMMY BROWN; and RODNEY WILKES, | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants Tommy Brown and Rodney Wilkes' Motion to Dismiss.  Doc. 30.  Plaintiff filed a Response, opposing Defendants' Motion to Dismiss, and Defendants filed a Reply.  Docs. 32, 34.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants Brown and Wilkes for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal as to these Defendants.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.  Finally, to the extent Plaintiff moved for judgment on the pleadings in his Response, doc. 32 at 6, I **RECOMMEND** the Court **DENY** Plaintiff judgment on the pleadings.[1]

---

[1] Plaintiff has not moved separately for judgment on the pleadings.  Instead, his request is included in his Response to Defendants' Motion to Dismiss.  Doc. 32 at 6.  However, such a request must be made by motion, rather than in response to a motion.  Fed. R. Civ. P. 7(b); see also Robbins v. Owners Ins. Co., No. CV614-095, 2015 WL 3910920, at *1 n.4 (S.D. Ga. June 24, 2015); May v. Tucker, CV 214-053, 2016 WL 676451, at *7 (S.D. Ga. Jan. 22, 2016).

**PROCEDURAL HISTORY**

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983 against Defendants for bringing false Prison Rape Elimination Act ("PREA") charges against Plaintiff and for losing or confiscating Plaintiff's property. Doc. 1. After conducting frivolity review, the Court dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities and Plaintiff's claims against Defendants for false PREA charges. Doc. 28. Plaintiff was permitted to proceed on his deprivation of property claim against Defendants Brown and Wilkes in their individual capacities.

In his Complaint, Plaintiff alleges while he was incarcerated at Coffee Correctional Facility ("CCF"), Defendants lost his property because it was not returned to him following his removal from segregation. Doc. 1 at 15. Plaintiff states additional property was then confiscated as part of several "shakedowns." Id. at 16. Plaintiff states these property losses occurred on December 4, 2018, December 11, 2018, December 19, 2018, and February 1, 2019. Id. at 15–16.

Defendants Brown and Wilkes argue Plaintiff's deprivation of property claim should be dismissed because he failed to exhaust available administrative remedies prior to filing suit. Doc. 30-6 at 1–2; Doc. 34. Alternatively, they argue Plaintiff's claims must be dismissed because he failed to allege a physical injury, and, to the extent Plaintiff seeks declaratory or injunctive relief, his claims are moot because he has been released from prison. Id. at 2. Plaintiff filed a Response, arguing he properly exhausted available administrative remedies and opposing Defendants' Motion. Doc. 32.

**DISCUSSION**

**I.    Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530

3

F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit.") (quoting Higginbottom, 223 F.3d at 1261).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review compromising the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**II.    Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at

4

1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1214 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . .

5

they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'") (quoting Turner, 541 F.3d at 1083); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 201 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

6

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 201 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

Defendants argue Plaintiff's Complaint should be dismissed because he failed to appeal both his unanswered lost/stolen property claim and his denied grievance related to his property loss, as required by the prison's policies, prior to filing suit and, thus, did not properly exhaust his available administrative remedies. Doc. 30-6; Doc. 34 .

#### A. The Georgia Department of Corrections' ("GDC") Administrative Remedies

CCF utilizes the GDC procedures for prisoner grievances. Doc. 30-1 at 1; Doc. 30-2. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Doc. 30-1 at 2; Doc. 30-2 at 2–20. SOP 227.02 contains the policy for general grievances, including grievances related to lost property. Doc. 30-1 at 3; Doc. 30-2 at 5. Under SOP 227.02,

inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 30-2 at 5–6. Listed non-grievable issues do not include lost property. Doc. 30-2 at 5–6.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Doc. 30-1 at 2; Doc. 30-2 at 9. Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Doc. 30-1 at 3; Doc. 30-2 at 9–10. Second, if an inmate is dissatisfied with the response, he may appeal the decision to the GDC Central Office. Doc. 30-1 at 3; Doc. 30-2 at 15. An appeal must be filed within seven days of an inmate receiving CCF's response. Doc. 30-2 at 15. The grievance procedure is not complete until the inmate files an appeal to the GDC Central Office. Doc. 30-1 at 3.

Additionally, CCF's Inmate Property Policy specifically addresses the prison's Lost/Stolen Property Claim Procedure. Doc. 30-3 at 4; Doc. 34-2 at 1–2; Doc. 34-2. Along with filing a grievance per the procedures outlined above, inmates who claim their property has been lost or stolen must first submit a Lost/Stolen Property Claim and then appeal that claim if they are not satisfied with CCF's response. Doc. 30-3 at 4; Doc. 34-1 at 2. Thus, inmates must exhaust two grievance procedures—the GDC grievance procedure and CCF's Lost/Stolen Property Claim Procedure—before filing suit regarding lost or stolen property. Doc. 34-1 at 2.

### B. Plaintiff Did Not Properly Exhaust Available Administrative Remedies

Defendants argue dismissal is appropriate because Plaintiff did not properly exhaust his available administrative remedies. Docs. 30-6, 34. Defendants acknowledge Plaintiff generally appealed Grievance Number 283133 but assert the appeal only related to Plaintiff's PREA claim,

8

which the Court has dismissed.  Doc. 30-6 at 5, 8.  Further, Defendants argue Plaintiff failed to appeal his lost/stolen property claim, which means he failed to exhaust his available administrative remedies.  Doc. 34 at 5.

Plaintiff, on the other hand, states he properly exhausted his administrative remedies because he appealed the denial of his grievance and could not appeal his lost/stolen property claim because he never received a response.  Doc. 32 at 3.  Further, Plaintiff asserts Defendants improperly denied his Grievance Number 283133 as untimely.  Plaintiff argues his grievance was timely, as he never received a response from the lost/stolen property claims he submitted, which prohibited him from filing a grievance within the 10-day window.  Moreover, Plaintiff contends his lost/stolen property claims and other attempts at resolution demonstrated he exhausted available administrative remedies prior to filing suit.  Id.

### 1. Plaintiff's claim survives under <u>Turner</u> Step One.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Plaintiff's allegations and Defendants' allegations plainly conflict.  Plaintiff asserts he properly filed his lost/stolen property claim and timely asserted and appealed his deprivation of property claims contained in Grievance Number 283133.  Doc 32 at 3.  Further, Plaintiff argues he could not have appealed his lost/stolen property claim because he never received a response.  Id.  Defendants contend Plaintiff did not appeal the portion of his grievance related to his claim currently before the Court and he was still required to file an appeal of his unanswered lost/stolen property claim.  Doc. 30-6 at 8–9; Doc. 34 at 5.

As explained above, proper exhaustion of Plaintiff's deprivation of property claims requires Plaintiff to first exhaust the lost/stolen property claim process, which includes filing an initial lost/stolen property claim and then appealing any denial of that claim and then following CCF's grievance process by filing a grievance and then appealing any unsatisfactory response to the GDC Central Office.

Looking solely at Plaintiff's Response, his allegations are enough to survive an exhaustion challenge under the first prong of the Turner test. Plaintiff states he filed a grievance and appealed that grievance after exhausting his remedies under the CCF's Lost/Stolen Property Claim Procedure. Doc. 32 at 3–4. Plaintiff contends he could not appeal an unanswered lost/stolen property claim, and thus, properly moved to CCF's grievance procedure, which he also exhausted.

### 2. *Plaintiff's claim fails under Turner Step Two.*

The parties' filings implicate a factual question as to whether Plaintiff properly exhausted CCF's Lost/Stolen Property Claim Procedure or appealed his property claims contained in Grievance Number 283133.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment. See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

This analysis begins with the burden.  Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion, demonstrating a sufficient opportunity to develop the record.

The evidence does not support Plaintiff's contention he properly appealed Grievance Number 283133. Defendants submitted Grievance Number 283133, along with Plaintiff's appeal related to that grievance. Doc. 30-4. In the initial grievance form, Plaintiff complains of his lost personal property. Id. at 4. In that grievance, Plaintiff also complains of the false PREA charges. Id. However, once the grievance was denied as untimely, Plaintiff's appeal contains no mention of his lost property. Id. at 5. Instead, Plaintiff's appeal of Grievance Number 283133 only pertains to the purportedly false PREA charges. Indeed, a plain reading of Plaintiff's appeal is that Plaintiff was abandoning any portion of his grievance related to his lost property in favor of focusing on the allegedly false PREA charges. Thus, Plaintiff plainly failed to exhaust his available administrative remedies as to this claim.

Plaintiff argues his other efforts in resolving his lost property, including filing multiple lost/stolen property claim forms demonstrates exhaustion. Doc. 34 at 2–3. However, exhaustion must be "proper." "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom, 223 F.3d at 1261. The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id. Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review compromising the agency's administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step

within the administrative process.'") (quoting Johnson, 418 F.3d at 1157); Sewell, 2007 WL 201269 (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies). Here, the evidence shows Plaintiff did not attempt to appeal his lost/stolen property claims. Plaintiff did not file an appeal when the time for a response expired, file a late appeal, or seek permission to file an out of time appeal. Additionally, Plaintiff failed to appeal the portion of his grievance relating to his deprivation of property claim before filing suit. Therefore, Plaintiff failed to exhaust his available administrative remedies.

Further, any argument Plaintiff could not pursue his administrative remedies because he never received a response to his lost/stolen property claim is contradicted by the record, as Plaintiff clearly understood to grieve the lack of response, at least initially. Doc. 30-4 (complaining about the amount of time that had passed since the claim was submitted); see Kozuh v. Nichols, 185 F. App'x 874, 878 (11th Cir. 2006) (determining the district court properly held the plaintiff failed to exhaust administrative remedies, where, despite the plaintiff's contentions, evidence showed he was able to file numerous complaints).

The above-discussed evidence leads to the conclusion the administrative process was available to Plaintiff and Plaintiff voluntarily failed to pursue the claim and grievance appeal processes to file suit. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants Brown and Wilkes for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal as to these Defendants. Because I have recommended dismissal based on Plaintiff's failure to exhaust, I decline to address Defendants' other arguments for dismissal.

IV.     **Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants Brown and Wilkes for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal as to these Defendants. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 18th day of January, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA